UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK A. B.,[1] Plaintiff, v. FRANK BISIGNANO, Defendant. | ) ) ) ) ) ) ) ) ) | No. 1:25-cv-01583-KMB-JPH |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Mark B. applied for child's insurance benefits from the Social Security Administration ("SSA") on October 12, 2022, alleging an onset date of January 26, 2021.[2] [Dkt. 11-2 at 11.] Administrative Law Judge Monica LaPolt (the "ALJ") issued a decision on July 29, 2024, concluding that Mark was not disabled before attaining age 22 and therefore was not entitled to receive the requested benefits. [*Id*. at 11-23.] The Appeals Council denied Mark's request for review on June 4, 2025. [*Id*. at 2.] On August 8, 2025, Mark timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Although Mark was 19 years old on his alleged onset date, he seeks child's insurance benefits based on his status as the child of an insured wage earner. [Dkt. 11-2 at 11.] To qualify for such benefits based on disability, Mark must establish that his disability began before he attained age 22. 20 C.F.R. § 404.350(a)(5). Because Mark was an adult throughout the relevant period, his disability claim is evaluated under the five-step sequential evaluation applicable to adults. 20 C.F.R. § 404.1520(a)(2).

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

Mark was 21 years old when he applied for disability benefits. [Dkt. 11-2 at 13.] He previously worked for short periods as a crew member at Wendy's and as a warehouse worker at Amazon. [Dkts. 11-2 at 22; 11-6 at 64 .]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Mark was not disabled. Specifically, the ALJ found as follows:

- At Step One, Mark has not engaged in substantial gainful activity since January 26, 2021, the alleged onset date. [Dkt. 11-2 at 13]
- At Step Two, prior to attaining age 22, Mark has the following severe impairments: anxiety, depression, autism spectrum disorder, and an attention deficit-hyperactivity disorder. [*Id.*]
- At Step Three, prior to attaining age 22, Mark did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 14.]
- After Step Three but before Step Four, the ALJ found that prior to attaining age 22, Mark had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple and routine tasks. He can perform occasional decision making and manage occasional changes in the work setting. He can perform work that should be performed at a variable pace involving only end of the day production requirements with no other periodic or hourly production quotas. He can tolerate occasional and incidental interaction with coworkers in that the need to listen to or talk to coworkers to is not essential to performing job tasks, he is not an integral part of a team, and he does not work in tandem with others. He can tolerate occasional, non-transactional interaction with the public." [*Id.* at 17.]
- At Step Four, Mark has no past relevant work. [*Id.* at 22.]
- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Mark's age, education, and RFC, the ALJ found that there were jobs that existed in the national economy that Mark could have performed prior to turning 22, including cleaner, laundry worker, and hand packager. [*Id.* at 23.]

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

## III. DISCUSSION

Mark raises three issues for the Court's review: (1) whether the ALJ adequately accounted for his limitations in concentration, persistence, and pace in the RFC; (2) whether the ALJ adequately addressed evidence concerning his ability to interact with others in the workplace; and (3) whether the ALJ properly evaluated his subjective symptoms and activities of daily living. [Dkt. 17.] The Court begins with Mark's argument that the ALJ failed to adequately address evidence concerning his ability to interact with others in the workplace, which the Court finds to be dispositive of this appeal.

### A. The ALJ failed to adequately address evidence concerning Mark's ability to interact with others in the workplace

Mark argues that the ALJ failed to address pertinent evidence concerning his ability to interact with others in the workplace. [Dkt. 17 at 10-12.] The ALJ found that Mark had a moderate limitation in interacting with others and accordingly limited him to occasional and incidental interaction with coworkers and occasional, non-transactional interaction with the public. [Dkt. 11-2 at 15-17.] The RFC did not, however, impose any limitation on Mark's interactions with supervisors. [*Id.* at 17.] Mark contends that, in assessing these limitations, the ALJ failed to address treatment records from Ms. Cheryl Chataignier, LCSW, who documented Mark's extreme reactions to negative interactions in the workplace and his concerns that he would react similarly in future employment. [Dkt. 17 at 11-12.] Specifically, Mark references that he reported in July 2022 that he did not respond well when his manager at Wendy's was negative toward him and that he knew he "had to leave" or he "would end up killing everyone." [Dkt. 11-7 at 532.] Mark also reported homicidal ideation. [*Id.* at 534.] His therapist subsequently documented that Mark's employment at Wendy's ended when he believed he might hurt himself or others and that Mark feared he would be unable to manage his anger if required to work around other people. [*Id.*] In

later treatment sessions, Mark reported that he did not believe he could work around others without becoming angry if he perceived something as unfair, worried that he might want to hurt someone who lied about or bullied him in the workplace, attempting to avoid situations that caused him to have violent thoughts. [*Id*. at 544, 622, 625, 629.]

Mark emphasizes that the ALJ did not discuss these reports in her decision. [Dkt. 17 at 11-12.] According to Mark, this omission is significant because the evidence directly bears on his ability to interact appropriately with others in a workplace and undermines the social limitations contained in the RFC. [*Id.* at 12.] Mark further argues that the error was not harmless because the VE testified that an individual who was limited to superficial contact with supervisors and had difficulty responding appropriately to criticism could not sustain competitive employment. [Dkt. 11-2 at 66.] Thus, Mark maintains that the ALJ was required to confront this contrary evidence and explain why it did not warrant additional limitations in the RFC. [Dkt. 17 at 12.]

The Commissioner responds that substantial evidence supports the ALJ's interaction limitations and that Mark has not identified any additional limitation compelled by the record. [Dkt. 19 at 10-12.] Although Mark contends that the ALJ overlooked his reports concerning his experience at Wendy's and fears of acting out in anger at work, the Commissioner emphasizes that the ALJ cited the treatment records containing those reports and considered that Mark generally presented as cooperative and pleasant, reported getting along well with authority figures and never losing a job because of interpersonal problems, and told Dr. Terrell that he left his most recent job because it was too physically demanding. [*Id*. at 11.] The Commissioner therefore maintains that the record does not warrant additional interaction restrictions and that the VE's testimony concerning greater limitations is irrelevant. [*Id*. at 10-12.]

In reply, Mark argues that the ALJ's citation of the treatment records containing his reports of angry and violent thoughts does not demonstrate that the ALJ considered that evidence. [Dkt. 22 at 3-4.] Mark emphasizes that the ALJ never discussed those reports or explained how they can be reconciled with the RFC, and he maintains that the Commissioner's reliance on other evidence favorable to the ALJ's conclusion does not cure that omission. [*Id*. at 4.] According to Mark, his reports concerning his experience at Wendy's and his continued need to avoid social situations were significant evidence bearing on his ability to sustain workplace interactions—particularly unrestricted interaction with supervisors—that the ALJ was required to address. [*Id*.]

An ALJ assessing a claimant's RFC must consider "all of the relevant evidence in the case record," including evidence from attempts to work. SSR 96-8p. Although an ALJ need not discuss every piece of evidence in the record, she "may not ignore entire swaths of [evidence] that point toward a finding of disability." *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021). Rather, an ALJ must "engag[e] with the evidence that weighs against [her] findings" sufficiently to permit meaningful judicial review. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018); *see also Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.").

The Court agrees with Mark that the ALJ did not adequately address the adverse evidence concerning his ability to interact with others in the workplace. In finding Mark moderately limited in interacting with others, the ALJ did acknowledge his reports that he had difficulty getting along with others and did not like being around people. [Dkt. 11-2 at 15.] The ALJ nevertheless emphasized that Mark reported having no problems getting along with authority figures and had never been fired or laid off because of problems getting along with others, and that treatment providers generally described him as calm, cooperative, and pleasant. [*Id.*] The ALJ later

discussed treatment records from Ms. Chataignier and again noted that Mark generally presented as cooperative and pleasant and demonstrated slow but consistent improvement. [*Id.* at 19.]

The problem is not, as the Commissioner suggests, that the ALJ failed to cite the treatment records on which Mark relies. Rather, the problem is that the ALJ did not confront the materially contrary information contained in those same records. Most notably, Mark reported that negative interactions with his manager at Wendy's caused him to believe that he needed to leave the job or he would "end up killing everyone." [Dkt. 11-7 at 532.] Ms. Chataignier subsequently documented that Mark's employment at Wendy's ended when he believed he might hurt himself or others and that he feared he would be unable to manage his anger if required to work around others. [*Id.* at 534.] Mark continued to report concerns about acting out in anger if he worked around others, wanting to hurt someone if he were lied about or bullied in a workplace, and avoiding situations to prevent violent thoughts. [*Id.* at 544, 622, 625, 629.] The ALJ did not discuss these reports or explain how she considered them in assessing Mark's ability to interact with others.

In this case, the ALJ's omission is significant because these reports bear directly on Mark's ability to function around others in a competitive workplace, and at least some of them arose from an actual work experience. The ALJ limited Mark to occasional and incidental interaction with coworkers and occasional, non-transactional interaction with the public, but the decision does not explain why those restrictions adequately account for evidence suggesting that negative workplace interactions could provoke substantially more serious reactions. [Dkt. 11-2 at 17.] The ALJ's reliance on Mark's cooperative and pleasant presentation during treatment does not resolve that issue.

The Court is likewise unpersuaded that Mark's reports that he generally got along with authority figures and had never lost a job because of interpersonal problems eliminate the need to

address the contrary evidence. Those reports provided evidence supporting the ALJ's conclusion, but they did not permit the ALJ to disregard evidence pointing in the opposite direction. *See Moore*, 743 F.3d at 1123. It was the ALJ's responsibility to consider the conflicting evidence and explain how she resolved it; the Court cannot do so on her behalf. The omission is not harmless merely because the Commissioner maintains that no additional restriction was compelled by the record. When asked whether an individual who "can only tolerate superficial contact with supervisors and would have difficulty responding appropriately to criticism" would affect that person's ability to maintain work, the VE testified it "that would eliminate competitive employment." [Dkt. 11-2 at 66.] Thus, the VE's testimony demonstrates that the evidence the ALJ failed to address concerns functional limitations that could be outcome determinative. [Dkt. 11-2 at 66.] Accordingly, the Court cannot say that the ALJ would necessarily have reached the same RFC determination had she expressly considered the omitted evidence.

In sum, the ALJ was required to confront the significant line of evidence concerning Mark's reactions to negative workplace interactions and provide enough explanation for the Court to trace her reasoning. Because the ALJ did not do so, the Court cannot determine whether the RFC's social-interaction limitations are supported by substantial evidence in this case. Remand is required for the ALJ to reconsider this evidence and explain what, if any, additional limitations it warrants.

**B. Other Arguments**

Having found that remand is necessary for the reasons detailed above, the Court declines to substantively address Mark's remaining arguments. Mark may raise those issues on remand if appropriate to do so.

## IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision denying Mark benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4). Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 9/14/2026

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email